FRANKLIN BRASS CO. v. PHOENIX ASSUR. CO.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

No. 92.

FIRE INSURANCE—INCREASE OF RISK.

The P. Ins. Co. issued to the F. Co. a "builder's risk" policy, insuring it against loss by fire on its factory buildings and machinery. The policy contained a written clause to the effect that the buildings were understood to be in course of construction, and that the insurance company was to be notified as soon as the assured was ready to commence manufacturing and the rate was to be adjusted, it being understood that the rate, after manufacturing was commenced, would be higher because of the increased risk. The policy also contained a printed clause to the effect that if the insured premises were so used as to increase the risk, or the risk was increased by the erection of neighboring buildings, or otherwise, without the assent of the insurance company, the policy should be void. The premises were destroyed by fire on September 4th. In an action on the policy, it appeared, without serious contradiction, that new policies were obtained by the assured, in other companies, which were to go into effect August 1st; that the assured had notified its agents to cancel the policy in suit; that the assured, without the assent of the insurance company, had erected a building on the premises, the existence of which materially increased the risk; that on August 4th the fires in the furnaces were started without notice to the insurance company; and that, at the time of the fire, as many as 30 persons were regularly employed in the factory, and a considerable quantity of manufactured goods had been turned out. *Held*, that the jury were properly instructed to render a verdict for the defendant.

In Error to the Circuit Court of the United States for the Western District of Virginia.

This was an action by the Franklin Brass Company against the Phoenix Assurance Company of London upon a policy of insurance. On the first trial, in the circuit court, a verdict and judgment were rendered for the plaintiff, which, on appeal to the circuit court of appeals, was reversed. 7 C. C. A. 144, 58 Fed. 166. On the second trial the court directed a verdict for the defendant. Plaintiff brings error.

T. J. Kirkpatrick, for plaintiff in error.

B. B. Munford and W. R. Staples, for defendant in error.

GOFF, Circuit Judge. This is the second time this case has been before this court, and the facts are sufficiently set forth in the opinion at October term, 1893, reported in 7 C. C. A. 144, 58 Fed. 166, and 8 U. S. App. 451. The judgment then complained of was reversed, and the cause remanded for a new trial. At the March term, 1894, of the circuit court for the Western district of Virginia, held at Lynchburg, it was again tried, and the jury, by direction of the court, returned a verdict for the defendant. The court refused to give the several instructions to the jury, asked for by the plaintiff, but directed a verdict for the defendant, to which action of the court the plaintiff below, now plaintiff in error, excepted. All the evidence offered to the jury is certified in the bill of exceptions. There was no exception taken to the action of the court in admitting or rejecting testimony during the trial. The action was at law on a policy of insurance issued by the Phoenix Assurance Company of London to the Franklin Brass Company, on the two-story frame factory building and other buildings connected therewith, and the engines, boilers, and machinery to be used in its business, contained in and on the premises of said last-named company, situated near James river, Buchanan, Botetourt county, Va. The policy was for one year from June 25, 1891, and was what is called a "builder's risk." The property mentioned in it was destroyed by fire on September 4, 1891. It was the usual fire insurance policy, the written portion thereof containing the following language:

"It is understood that the above buildings are in course of construction, and privilege is hereby given to complete the same; this company to be notified as soon as the assured are ready to commence manufacturing, and the rate to be adjusted."

It appears that the policy was written for one year, at the suggestion of the insurance agents, and that a new rate of premium was to be fixed when the assured were ready to manufacture, which rate was, because of the increased hazard, to be higher than that charged before manufacturing was commenced. A section in the printed portion of the policy reads as follows:

"If the above-mentioned premises shall be occupied or used so as to increase the risk, * * * without notice to and consent of this company in writing, or the risk be increased by the erection or occupation of neighboring buildings, or by any means whatever within the control of the assured without the assent of this company indorsed hereon, * * * then, and in every such case, this policy shall be void."

It clearly appears from the evidence that the party insured, as well as the insurance company, regarded the contract as a "builder's risk," and that a readjustment of the rate was to be made when the assured was ready to manufacture, or, if that was not done, that new policies were to be secured. It was shown that new policies were obtained by the assured, on the same property, in other companies, which were to go into effect on the 1st day of August, 1892, and that the assured notified its agents to have the policy now in suit canceled and the return premium remitted. The evidence also discloses that the insured company, after the date of the policy in suit, and without the assent of the insurance company, erected a building of pine timber, 60 by 25 feet in size, called a "Buffing Room," one corner of which was located 5 feet and 4 inches from the main building insured, and the uncontradicted testimony of the insurance experts who were examined before the jury was that this additional building did materially enhance the danger of destruction by fire of the buildings and contents thereof, as insured in the policy now in controversy. The testimony also shows that the said Franklin Brass Company, on the 4th day of August, 1892, after having secured the new insurance mentioned, caused the fires in the furnaces located in the insured buildings to be started, and this without having notified the insurance company, the defendant below. On this point we quote from the opinion rendered by this court in this case, to which we have before referred:

"By the 20th August, some ten or more operatives living in and around Buchanan were employed. The machinery was put in motion daily at the sounding of the whistle at seven o'clock in the morning. These operatives went to work, working until dinner time; then, after a short recess, worked until the factory closed for the night. They were paid off by the week. There is testimony tending to prove that at the time of the fire there were as many as 30 people employed in and about the factory. As many as 700 brass balls, which had been brought to the factory from the north in a partially completed state, were manufactured and sold upon order. Some thousands of brass hinges, one of the principal products of the works, were made, and only required to be polished in the buffing room—which was just about completed at the hour of the fire—to make them marketable goods. Several employés testify they had been working continuously day after day at the same presses, in the manufacture of the same class of goods, which presses were propelled by steam. While so engaged, the fire, which originated from the boiler, occurred, and the property was destroyed."

Under the circumstances thus set forth, can the plaintiff below—under the well-established rules of law applicable to insurance policies—recover on the contract set up in its declaration, and is there such conflict in the evidence as makes it necessary for the jury to pass on the fact? A careful examination of the case compels us to answer these questions in the negative. We do not find in the record such evidence as would have justified a verdict for the plaintiff, and we think it would have been the duty of the trial judge to have set aside such a verdict had one been returned.

While it is true that the written portion of the policy must govern, where there is a conflict between it and the printed provisions thereof, it is also true, we think, that there is no such conflict in the contract we are now considering; in other words, we

hold that the printed conditions of the policy, prohibiting an increase of the risk by the party assured, continued of binding force and effect, and that the written stipulations were not intended to and did not either modify or set them aside. This was in substance announced as the proper construction of the policy now in suit, when this case was formerly before this court, and now, after reargument by counsel, re-examination of the cases in point, and consideration of all the clauses and conditions of the contract, we are satisfied with the conclusion then reached, and announce our adherence to it. To construe the policy, as contended for by plaintiff in error, would be for the court, in effect, to make a new contract for the parties. That, the courts cannot do, but they must enforce the agreements duly made by parties competent to contract, and not permit the terms and conditions of the same to be violated or set aside. The terms of this policy are those usual to risks of the character described in it, they were agreed to by parties entitled under the law to so contract and bind themselves, and, while they may seem harsh, still they can be easily complied with, and long business experience has demonstrated that they are essential to the proper management of insurance companies, and that their enforcement is necessary in the interest of the assured as well as of the party insuring.

We think that the testimony conclusively proves that the Franklin Brass Company did commence manufacturing without having notified the insurance company of its readiness to do so, and without having had the rate of the risk occasioned thereby adjusted; and also that the terms of the policy were violated by the assured, when it caused an additional building to be erected very near the property insured, the assent of the insurance company not having been obtained and indorsed on the policy. This was so plainly shown at the trial that it was the duty of the judge presiding to direct a verdict for the insurance company, and his action in so doing is approved of by this court. The decisions are many and of the highest authority that, in cases where the testimony is of the character of that submitted to the jury in this case, it is not only proper, but it is the duty of the court, to direct a verdict, and in this case we think the conclusion follows, as matter of law, that the plaintiff below cannot recover, upon any view which can be properly taken of the facts that the evidence submitted to the jury tends to establish. Upon this proposition the following authorities are referred to: Blount v. Railway Co., 9 C. C. A. 526, 61 Fed. 375; Pleasants v. Fant, 22 Wall. 116; Herbert v. Butler, 97 U. S. 319; Bowditch v. Boston, 101 U. S. 16; Griggs v. Houston, 104 U. S. 553; Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322; Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125; Coyne v. Railway Co., 133 U. S. 370, 10 Sup. Ct. 382; Gunther v. Insurance Co., 134 U. S. 110, 10 Sup. Ct. 448; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569; Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85; Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140; Railroad Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619. It will not be necessary to further consider the questions

raised by the assignments of error, as the same are in substance involved in the action of the trial judge in directing the verdict for defendant below; and as we hold that it was his duty, under the circumstances shown in this case, to so direct, it follows that the judgment complained of must be affirmed.