## PATTON v. SOUTHERN RY. CO.

### (Circuit Court of Appeals, Fourth Circuit. November 3, 1897.)

### No. 200.

1. NEGLIGENCE—PROVINCE OF COURT AND JURY.

When, in an action of negligence, the facts are undisputed, and such that all reasonable minds must draw the same conclusion from them, it is the duty of the judge to say, as matter of law, whether or not they make a case of actionable negligence.

2. SAME.

In all actions of negligence there is a preliminary question, which the judge must decide: Whether, granting to the testimony all the probative force to which it is entitled, a jury can properly and justifiably infer negligence from the facts proved.

**3. Same—Questions for Jury.**
  In all actions founded on negligence, whenever the facts are in dispute or conflicting, or the credibility of witnesses is involved, or the preponderance of testimony, and wherever the facts admitted or not denied are such that fair-minded men might draw different inferences from them, it is a case for a jury.

**4. Master and Servant—Negligence of Railroad Company—Safety of Roadbed.**
  It is the duty of a railroad company to provide a safe track and roadbed, and not to expose its employés to any perils or hazards against which they may be guarded by proper diligence.

**5. Same—Degree of Care Required.**
  The degree of care required from a railroad company in respect to the condition and equipment of its tracks and roadbed is to be measured by the exigencies of the situation, and will often depend upon the situation of the road and the topography of the ground.

**6. Same—Assumption of Risks.**
  Employés of a railroad company whose road runs through a land of steep grades assume greater risks than if upon level lands.

**7. Same—Evidence—Question for Jury.**
  Plaintiff was injured by the derailment of a train at a sharp curve at the foot of a steep grade. It appeared that there had been previous accidents at the same place from the same cause. There was evidence that a guard rail at that point would be a great safeguard. *Held,* that a question of fact was presented for the jury, whether plaintiff was subjected to any increased or unnecessary danger through lack of some appliance which would have prevented the derailment.

**8. Same—Presumptions.**
  The happening of a railroad accident does not of itself prove negligence, but, where it reveals defects such that ordinary diligence and care would have discovered and prevented them, the company cannot be free from the imputation of negligence in failure to adopt some safeguards or preventive remedies in proportion to the imminency of the danger.

**9. Same—Negligence—Accident.**
  If an injury is the combined result of accident and negligence, the fact that the contributing cause was pure accident would not exonerate a defendant, if guilty of a want of ordinary care by which the result of the unavoidable calamity might have been essentially mitigated.

  Goff, Circuit Judge, dissents generally on the facts.

In Error to the Circuit Court of the United States for the Western District of North Carolina.

F. A. Sondley and Theodore F. Davidson, for plaintiff in error.
George F. Bason and Charles Price, for defendant in error.

Before Mr. Chief Justice FULLER, GOFF, Circuit Judge, and BRAWLEY, District Judge.

BRAWLEY, District Judge. It is difficult to mark with precision the exact line which separates the functions of the judge from the functions of the jury in actions of negligence; for this being a mixed question of law and fact, and the terms by which it is usually defined having a relative significance, the rule requiring judges to decide questions of law, and juries to decide questions of fact, is perplexed with subtleties when applied to the special circumstances of each particular case. When the facts are undisputed, and such that all reasonable minds must draw the same conclusion from them, it is clearly the duty of the judge to say, as matter of law, whether or not they make a case of actionable negligence; but such is the in-

firmity of the human mind, and such its idiosyncrasies, that minds equally honest may sometimes draw different conclusions from the same facts. In all such cases, and wherever the facts are in dispute, it is as clearly the duty of the judge to submit them to the jury; for the law holds that 12 impartial men, applying their separate and varied observations and experiences of everyday life to the decision of questions of fact, are more likely to reach a correct conclusion than a single judge; and this must be so, if the jury system is worthy to be preserved. The courts have long since abrogated the doctrine that a mere scintilla of evidence from which there might be a surmise of negligence is sufficient to carry a case to a jury, and have adopted the more reasonable rule that in all cases there is a preliminary question, which the judge must decide,—whether, granting to the testimony all the probative force to which it is entitled, a jury can properly and justifiably infer negligence from the facts proved; for, while negligence is usually an inference from facts, it must be proved, and competent and sufficient evidence is as much required to prove it as to prove any other fact. The simplest definition of "negligence" is, absence of due care under the circumstances. This seems easy of comprehension, but when one attempts to apply it to a particular case the inherent vagueness of the terms "due care" and "reasonable prudence" becomes apparent; for there is no fixed and immutable standard by which to measure duty in the varying and diverse transactions and happenings of life, and what may be due care in one condition and relation is the want of it in another. A process of ratiocination, therefore, becomes necessary,—comparison and deduction. When this comes into play, new difficulties arise, from the distinctive individualities, peculiarities, and anfractuosities of the human mind. Of all the reported cases wherein judges have granted nonsuits or directed verdicts in actions of negligence, there are few where other judges, equally conscientious, might not have discovered some fact which would be considered rightly capable of producing a different impression on other minds, and therefore properly cognizable by a jury. One clear thread seems to run through them all, and that is that in all actions founded on negligence, whenever the facts are in dispute or conflicting, or the credibility of witnesses is involved, or the preponderance of testimony, and wherever the facts admitted or not denied are such that fair-minded men might draw different inferences from them, it is a case for a jury, and a case should not be withdrawn from the jury unless the inferences from the facts are so plain as to be a legal conclusion. In the case now under review the essential facts are few and undisputed. It is in attempting to draw inferences from those facts that we are plunged into a sea of uncertainty, where there is no chart directing to an infallible conclusion. A learned and conscientious judge, in dismissing the complaint, has, in effect, decided that no inference of negligence could rightly be deduced from these facts. It was his duty to so decide if the case was so plain that he would have been impelled to set aside the verdict as one rendered through prejudice, passion, or caprice. It is equally our duty to review the correctness of his conclusion.

The accident out of which the action grew occurred near Melrose, on the Asheville & Spartanburg Railroad, between 3 and 4 o'clock in the morning of October 10, 1894. The plaintiff was the conductor of a freight train, and left Asheville a little after midnight with a train of 16 loaded cars, arriving at Saluda about half past 2 o'clock. The rules of the company required the conductor to go over his train with the engineer at Saluda, and to inspect the brakes and appliances. A helper engine is kept at Saluda to help trains up and down the grade. It was usually employed in helping trains up the grade, but could be used in going down, if required. It was not manned or fired that morning, and the conductor, not deeming it necessary, did not ask for it. Between Saluda and Melrose, the first station 3 miles to the east, there is a very steep grade,—about 240 to 260 feet to the mile. For a half mile after leaving Saluda the train was kept under control. After that the brakes failed to hold, the train got beyond control and rushed down the mountain side at a terrific speed past Melrose, the foot of the steep grade, and was wrecked at a point one-half mile below where there is a sharp curve, and the plaintiff received injuries which necessitated the amputation of his leg. It is impossible for any fair-minded man to say with certainty what caused the train to get beyond control. There was evidence that some of the brakes were found defective on the arrival at Saluda, but they were repaired, and the conductor evidently concluded that his train was in a safe and suitable condition to make the descent; for, having the right to demand the assistance of the helper, he did not ask for it. In the opinion of the presiding judge, he "was a man of intelligence, of good habits, of experience in the management and movement of trains, perfectly familiar with this steep grade on which the wreck occurred, and its dangers." The cause which led to the train getting beyond control may therefore be said to be inscrutable. We do not find any proof of such negligence on the part of the company in not providing safe machinery and appliances as would sustain a verdict against it. Nor is there any proof of such contributory negligence on the part of the plaintiff as would prevent his recovery if negligence on the part of the company had been established. The best machinery that can be provided will sometimes fail to respond to the demands upon it, as the most careful of human beings will sometimes omit due precautions. Inattention and accident are incident to human affairs. This being the obvious conclusion of all human experience, it is a duty to provide against such contingencies, and the omission to make such provision may be justly regarded as negligence. Whether there was such omission of duty in this case is the only question to be considered, for there is no sufficient evidence of negligence as to the cars and brakes and other appliances. In view of the testimony that accidents of this nature had frequently occurred at this very place, and in the very manner detailed here; that it was an extremely steep grade,—a dangerous place, where accidents were likely to occur,—we hold that it was an obvious duty of the defendant company, not only to take every precaution to prevent such accidents, but also to provide against the consequences thereof, and to minimize the

dangers likely to flow therefrom, if they could not, in the nature of things, be altogether prevented. As to whether that could be effectually accomplished, we express no opinion. That seems to us peculiarly a question of fact, to which a jury should respond under such instructions as the court would properly give. The testimony in this case showed that about one-half mile from the foot of the steep grade there was a sharp curve, where the train was derailed, and that there was no guard rail at that curve. A witness who claimed to have had 20 or 25 years of experience as a railroad constructer, and one who had been a section boss for 16 years, testified that a guard rail upon such a curve would be a great safeguard; that guard rails are used upon a great many railroads; that they have a tendency to hold the flange of the wheels on, and to prevent their leaving the track, and as such they are a great protection. If this testimony is to be believed, it is impossible to resist the conclusion that the absence of the guard rail may have been the cause of the derailment. That it is the duty of a railroad company to provide a safe track and roadbed, and that its employés should not be exposed to any perils or hazards against which they may be guarded by proper diligence, is a proposition which cannot be disputed; and the degree of care is to be measured by the exigencies of the situation, and will often depend upon the situation of the road and the topography of the ground. Persons employed upon a road such as this undoubtedly assume greater risks than upon level lands, but on the other hand the degree of care and prudence in the construction of a track through mountain ranges varies with the circumstances, and what might not be a faulty construction upon the level would be so in a land of steep grades and sharp curves. Engineering questions should not be left entirely to the varying and uncertain opinion of juries, but the well-established rule as to the duty of a railroad company to use due care and skill in the construction and maintenance of track and roadbed cannot be abrogated. There is a common knowledge, which may be gathered from the experience and observations of everyday life, which, while it may not outweigh the opinion of competent engineers, is entitled to be considered in connection with it; and, where previous accidents at the same place from the same cause had directed attention to a source of danger, it seems to us to present a question of fact, for the determination of a jury, under proper instructions, whether, under the circumstances of this case, the plaintiff was subjected to any increased and unnecessary danger by reason of the failure of the defendant company to provide a guard rail, or some other appliance which would have prevented the derailment. It may be that the company might show that a guard rail would not answer that purpose, but that is a matter of defense. A railroad company, in relation to its servants, is not bound to adopt every new invention which may lessen danger. If it keeps reasonably abreast with improved methods, its servants must determine for themselves whether they will encounter the hazards incidental to the service. Nor can it always be said, after an accident has occurred, that it ought to have been anticipated by the use of some special device or precaution not in common use. The happening of an accident does not of itself prove negligence, but,

where it reveals defects of such character and of such long standing that ordinary diligence would have discovered and ordinary care have prevented them, a company cannot be free from the imputation of negligence in failing to adopt some safeguards or preventive remedies proportioned to the imminency of the danger. If the injury is the combined result of accident and negligence, the fact that the contributing cause was pure accident would not exonerate a defendant, if guilty of a want of ordinary care, by which the result of the unavoidable calamity might have been essentially mitigated. Our records show another case at this term where a train was derailed at this same spot, and the testimony showed that accidents had been frequent there. Mr. Justice Field, in District of Columbia v. Armes, 107 U. S. 525, 2 Sup. Ct. 845, says: "The frequency of accidents at a particular place would seem to be good evidence of its dangerous character. At least, it is some evidence to that effect." The testimony of Corpening, a railroad builder of over 20 years' experience, was that a guard rail at the curve would have been a great safeguard, and would have tended to keep the train on the track. The testimony of Owens, formerly a section boss, of 16 years' experience, was to the same effect. The case, therefore, does not seem to us to fall within the rule above stated, in that there was some testimony from which, if believed, a jury might have fairly inferred that the company was negligent in not providing guard rails at the curve. "It is well settled," says Mr. Justice Brewer in Railroad Co. v. Powers, 149 U. S. 45, 13 Sup. Ct. 749, "that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them." "If fair-minded men may draw different inferences," says the court in Railroad Co. v. McDade, 135 U. S. 572, 10 Sup. Ct. 1049, "no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be reasonable and prudent," says Mr. Justice Lamar in Railway Co. v. Ives, 144 U. S. 417, 12 Sup. Ct. 682. "Where the inference to be drawn from the facts is not so plain as to be a legal conclusion." Railroad Co. v. Egeland, 163 U. S. 93, 16 Sup. Ct. 975. "There can be no doubt, where evidence is conflicting, that it is the province of the jury to determine from such evidence the proof which constitutes negligence." Mr. Justice White in Railroad Co. v. Pool, 160 U. S. 440, 16 Sup. Ct. 339; Railroad Co. v. Stout, 17 Wall. 664; Jones v. Railroad Co., 128 U. S. 446, 9 Sup. Ct. 118; Kane v. Railroad Co., 128 U. S. 91, 9 Sup. Ct. 16. Courts cannot fix, themselves, nor allow juries to fix, an arbitrary standard of duty in any given case. Nor can it be left entirely to surmise, conjecture, guess, or random judgment, whether proper precautions were taken, or whether any precautions would have warded off the result. Nor can the varying and uncertain opinions of jurors be permitted to determine engineering or scientific questions. We express no opinion upon these points. All that we determine is that there was testimony sufficient to go to the jury in this case. If their minds are

properly directed to the precise questions which it is their province to determine, and they are not swayed by extraneous circumstances, there should be little danger of a miscarriage of justice. The right and duty of a court to set aside a verdict not supported by adequate testimony, always inflexibly maintained, will suffice to correct an occasional abuse. Judgment reversed and case remanded, with instructions to grant a new trial.

GOFF, Circuit Judge. I am unable to concur in the conclusion reached by the court in this case, as in my opinion the judgment rendered by the court below is without error. After the plaintiff had offered his testimony to the jury, counsel for the defendant, without offering any evidence, moved the court to direct a verdict in favor of the defendant company. In disposing of the motion the trial judge said:

"Can the plaintiff, under the evidence taken in this case, hold the defendant liable for the injury which he received? The plaintiff was the conductor of the wrecked train. He is a man of intelligence, of good habits, of experience in the management and movement of trains,—perfectly familiar with the steep grade on which the wreck occurred, and with its dangers. As conductor of the train, and in control of it, he had concluded to take it down the grade. He had carefully examined the brakes of the said train, had found the defects in them, and had remedied these defects to his own satisfaction. He knew everything about his train,—as to the number of the cars, their contents, and the weight. He was not obliged to take the risk of the descent,—at least, without protest. The brakes proved insufficient. The train ran away. The plaintiff took the risk at his own will, and must take the consequences. If the defendant is liable in a case like this, it is liable because its agent took a loaded train down this dangerous grade with insufficient protection. Now, who was the agent of the railroad company in charge of the train,—governing its movements? The plaintiff was. If the defendant company is liable, it is liable for his negligence."

Giving to the testimony offered by the plaintiff the full weight that it deserves, and drawing from it every just inference proper under the circumstances, I think the court properly directed the jury to find a verdict for the defendant. In cases where the testimony is like that found in the record we are now considering, it is, in my opinion, the duty of the trial judge to direct a verdict, for the reason that the conclusion follows, as matter of law, that the plaintiff cannot recover upon any view which can be taken of the facts that the evidence submitted to the jury tends to prove. Herbert v. Butler, 97 U. S. 319; Bowditch v. Boston, 101 U. S. 16; Griggs v. Houston, 104 U. S. 553; Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322; Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140; Railroad Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619; Railroad Co. v. Pool, 160 U. S. 438, 16 Sup. Ct. 338. This court, after a careful examination of the authorities bearing upon this question, reaffirmed the position I have just referred to in the case of Franklin Brass Co. v. Phœnix Assur. Co. (decided Feb. term, 1895) 25 U. S. App. 119, 13 C. C. A. 124, and 65 Fed. 773. It seems plain to me, if the jury had, on the evidence before it, rendered a verdict for the plaintiff, that it would have been the duty of the judge to have set it aside; and, if that be so, certainly he did not err in pursuing the course that he did. In

the case of Commissioners v. Clark, 94 U. S. 278, 284, Mr. Justice Clifford, speaking for the supreme court of the United States, said:

"Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence. Ryder v. Wombwell, L. R. 4 Exch. 39. Decided cases may be found where it is held that, if there is a scintilla of evidence in support of a case, the judge is bound to leave it to the jury; but the modern decisions have established a more reasonable rule, to wit, that before the evidence is left to the jury there is, or may be, in every case, a preliminary question for the judge,—not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. L. R. 2 P. C. 335; Improvement Co. v. Munson, 14 Wall. 448; Pleasants v. Fant, 22 Wall. 120; Parks v. Ross, 11 How. 373; Merchants' Bank v. State Bank, 10 Wall. 637; Hickman v. Jones, 9 Wall. 201."

I find no evidence in the record that establishes negligence on the part of the defendant. Indeed, it is conceded in the opinion of the court that there is no proof of negligence, so far as machinery and appliances are concerned; and I have no right to presume that such evidence exists, and will be offered in case another trial of this cause is had. The plaintiff was injured in an accident that occurred on a heavy grade on a mountain section of the defendant's road, as to which, on account of the danger attending the same, special rules and regulations had been established by the company for the movement of trains over it. The plaintiff was familiar with the road, the dangers attending the same, and the regulations established to govern it. For reasons that were doubtless satisfactory to him at the time, he ignored the rules, assumed the risk, and took the consequences; and, if there was negligence, it was, in my opinion, on his part. I think the judgment of the court below should be affirmed.