HON. JOHN B. CLAYBERG,
HON. LEW. L. CALLAWAY,
HON. W. H. POORMAN.

---

NORD, APPELLANT, v. BOSTON & MONTANA CONSOLI-
DATED COPPER & SILVER MINING
CO., RESPONDENT.

(No. 1,976.)

(Submitted February 12, 1904. Decided March 3, 1904.)

*Master and Servant—Injuries to Servant—Safe Place—As-
sumption of Risk—Contributory Negligence — Evidence—
Burden of Proof—Nonsuit—Appeal—Bill of Exceptions—
Specification of Errors—Rules of Supreme Court—Briefs.*

{48}

1. Supreme Court Rule X, Subdivision 3, does not require appellant to set out in his brief the reasons why he claims that the decision objected to is erroneous, and hence a specification that the court erred in sustaining defendant's motion for a nonsuit is sufficient without further statement.

2. A bill of exceptions need not contain a specification of errors of law relied upon.

3. Code of Civil Procedure, Section 1173, Subdivision 3, refers exclusively to a statement of the case, and has no reference to bills of exception.

4. Where plaintiff saved his exception to a ruling granting defendant's motion for a nonsuit, and settled his bill of exceptions containing the testimony and exception to the ruling of the court, such exception is all that is required to be shown by the bill in order to save plaintiff's right to urge that the court's ruling in granting the nonsuit was erroneous.

5. The question presented on a motion for a nonsuit is one of law.

6. A nonsuit should be granted only when the facts are undisputed and such that "all reasonable men must draw the same conclusions from them."

7. While, in an action for injuries to a servant, the burden is on the plaintiff to prove that defendant was negligent, and that the injury complained of was the direct or proximate result of the negligence alleged, the burden is on the defendant to show that plaintiff was guilty of such contributory negligence as would prevent his recovery, or that plaintiff assumed the risk of the employment.

8. Though the burden is on the master, in an action for injuries to his servant, to prove contributory negligence or assumption of risk, if the existence of such defense is disclosed by plaintiff's witnesses, defendant is entitled to the same advantage thereof as though proven on his part.

9. In an action for injuries to a servant, alleged to have resulted from the master's failure to provide a safe place for plaintiff to work, evidence reviewed, and *held* not to justify a nonsuit on the ground that it conclusively showed plaintiff to have been guilty of contributory negligence, or that plaintiff assumed the risk.

10. Where, in an action for injuries to a servant, the negligence alleged was defendant's failure to provide and maintain a reasonably safe place for plaintiff to work, and there was sufficient proof of such negligence to go to the jury, a variance relating merely to the details of the occurrence by which the injury was caused did not entitle defendant to a nonsuit.

11. Where, in an action for injuries to a servant, defendant moved for a nonsuit at the close of plaintiff's evidence, on the ground that the evidence conclusively showed that plaintiff was guilty of contributory negligence or that he assumed the risk, it could not be alleged for the first time on appeal that the nonsuit was properly granted by reason of an alleged variance between the pleading and proof.

*Appeal from District Court, Cascade County; · J. B. Leslie, Judge.*

Action by Nels Nord against the Boston & Montana Consolidated Copper & Silver Mining Company. From a judgment of nonsuit, plaintiff appeals. Reversed.

*Mr. A. C. Gormley,* and *Messrs. Word & Word,* for Appellant.

*Mr. W. T. Pigott,* and *Mr. Ransom Cooper,* for Respondent.

Section 89 of the Code of Civil Procedure, Compiled Statutes of 1887, required the denial of each allegation of the complaint to be made positively or according to the information and belief of the defendant. In *State ex rel. Milstead* v. *Butte City Water Co.,* 18 Mont. 199 (approved in *Rossiter* v. *Loeber, ib.* 372), this court held bad a denial couched in these words: "As to whether relator is a tenant in possession of the said premises, it has no knowledge or information upon which to found a belief, and therefore denies the same." The word "therefore" destroyed the effect of what would else have been a good denial. The principle of that case is applicable here.

The proximate cause of the injury was the act of the appellant himself. This appears from the complaint and also from the evidence. It likewise appears that such act created the presumption of negligence on appellant's part. In Montana the rule in such case is that the plaintiff must allege and (if denied) prove his freedom from negligence in doing the act. (*Kennon* v. *Gilmer,* 4 Mont. 433; *Nelson* v. *City of Helena,* 16 Mont. 21; *Prosser* v. *Montana Central Ry. Co.,* 17 Mont. 372.)

The evidence was insufficient to prove that the cause of the accident was respondent's failure to exercise ordinary care in respect of appellant. Negligence is the gist of the action. Appellant's sole contention is that respondent omitted to discharge one of the absolute or positive duties which it owed to appellant. Failure to cover the bin and furnish light enough to enable appellant to see the supposed hand-hold, is the only wrong alleged. He cannot recover for negligence in any other respect. (*Pierce* v. *Ry. Co.,* 22 Mont. 448.) Was it guilty of a delict in the particular specified? Not unless the law imposed upon it an obligation in that regard. "An obligation is a legal duty by which a person is bound to do or not to do a certain thing," and arises either from contract or operation of law. (Section 1921, Code of Civil Procedure.)

The master is not the insurer of the safety, or reasonable safety, of the place. His full duty in that regard is discharged when he has used ordinary care to provide and maintain a rea-

sonably safe place. (*Kelley* v. *Fourth of July Mining Co.,* 16 Mont. 484, 497; *Spelman* v. *Gold Coin Mining Co.,* 26 Mont. 80; *Baugh Case,* 149 U. S. 368; *Hollenback* v. *Dingwell,* 16 Mont. 340.)

However unsafe the place may be, the master is not liable for injuries caused thereby without proof of his failure to use ordinary care. The fact of the accident and consequent injury is not, as between master and servant, any proof of negligence. The legal presumption is that the master has used ordinary care, and the presumption stands until rebutted and overcome by evidence showing the contrary. (*Nolan* v. *Montana Central Ry. Co.,* 25 Mont. 107.)

The master has the right to provide and maintain such a place as experience sanctions as reasonably safe. (*Wash. Ry. Co.* v. *McDade,* 135 U. S. 569; *Loftus* v. *Union Ferry Co.,* 84 N. Y. 455; *Hubbell* v. *Yonkers,* 104 N. Y. 434; *Carr* v. *Tunnel Co.,* (Mich.) 92 N. W. Rep. 110.)

There is no presumption that the master knows that a servant is inexperienced or cannot appreciate obvious risks (*Railroad* v. *Frawley,* 110 Ind. 18), and he need not specially provide for the safety of the careless. His duty does not extend so far as to require that he protect a servant against himself. (*Crafter* v. *Met. Ry. Co.,* 1 Common Pleas, 300.)

Appellant's negligence contributed directly to the injury of which he complains. (Wharton on Negligence, Sec. 46; *Cummings* v. *Helena & L. S. & R. Co.,* 26 Mont. 451; 7 Am. & Eng. Ency. of Law, 383; *Patterson* v. *Hemenway,* (Mass.) 19 N. E. 15; *McAndrews* v. *Railway Co.,* 15 Mont. 290; *Railway Co.* v. *Ives,* 144 U. S. 408; *Taylor* v. *Carew Mfg. Co.,* 140 Mass. 150; *Huddleston* v. *Lowell Machine Shops,* 106 Mass. 282; *Pingree* v. *Leyland,* 135 Mass. 398; *Sullivan* v. *Ind. Mfg. Co.,* 119 Mass. 396; *Coal Co.* v. *Jones,* 127 Ill. 379; *Pawling* v. *Hoskins,* 132 Pa. St. 617; *Michael* v. *Stanley,* 75 Md. 464.)

Appellant assumed the risk of injury. (7 Am. & Eng. Ency. of Law, 413; *Tuttle* v. *Milwaukee Railway,* 122 U. S. 189;

*Johnson* v. *Railway Co.,* (Ore.) 31 Pac. 286; *Kelley* v. *Fourth of July Mining Co.,* 16 Mont. last paragraph on page 501; *McAndrews* v. *Railway Co.,* 15 Mont. 290; *Keen* v. *Detroit Co.,* 66 Mich. 277, 11 Am. St. Rep. 578; Wharton on Negligence, Sec. 214, page 195; *Cummings* v. *Helena & L. S. & R. Co.,* 26 Mont.451; 20 Am. & Eng. Ency. of Law, 115-122, and cases cited; *Seymour* v. *Maddox,* 16 Ad. & El. (Q. B.) 326; *Ladd* v. *New Bedford,* 119 Mass. 412.)

When the dangerous condition is equally well known to, or alike open to the observation of, master and servant, both are upon common ground and the master is not liable for a resulting injury. (7 Am. & Eng. Ency. of Law, 1057, 1064, and cases; 20 *ib.* 119, and cases; *Taylor* v. *Carew Mfg. Co.,* 140 Mass. 150; *Kohn* v. *McNulta,* 147 U. S. 238; *Feeley* v. *Cordage Co.,* (Mass.) 37 N. E. Rep. 368; *Southern Pac. Ry. Co.* v. *Seeley,* 152 U. S. 145; *Gibson* v. *Erie Ry. Co.,* 63 N. Y. 449; *Murphy* v. *Rubber Co.,* (Mass.) 34 N. E. Rep. 268; *Tuttle* v. *Milwaukee Ry.,* 122 U. S. 189; *Michael* v. *Stanley,* 75 Md. 464; *Lunberg* v. *Glenwood Lumber Co.,* (Cal.) 49 L. R. A. 33; *Sweeney* v. *Envelope Co.,* 111 N. Y. 520; *Appel* v. *Ry. Co.,* 111 N. Y. 550; *Kraeft* v. *Meyer,* (Wis.) 65 N. W. Rep. 1032; *McMillan* v. *Spider Co.,* (Wis.) 60 L. R. A. 589; *Koepcke* v. *Wisconsin Bridge Co.,* (Wis.) 92 N. W. Rep. 558.)

A servant assumes the risk of injury caused by the negligence of a fellow servant. Nelson, the "straw" boss, was not a vice principal, but Nord's fellow servant. (*Hastings* v. *Montana Union Ry. Co.,* 18 Mont. 493; *Goodwell* v. *Montana Central Ry. Co., ib.* 298; *Mulligan* v. *Montana Union Ry. Co.,* 19 Mont. 135; *Wastl* v. *Montana Union Ry. Co.,* 24 Mont. on page 169. These cases seem to overrule the *Berg Case,* 12 Mont. 212.)

The proximate cause having been the carelessness of a fellow servant, the appellant must fail even though the primary cause was respondent's wrong. (*Luman* v. *Mining Company,* (Cal.) 74 Pac. Rep. 30.) Manifestly the accident would not have hap-

pened but for Nelson's act.   Again, if the accident was caused
by Nelson's negligence in combination with Nord's, appellant
was properly nonsuited.

The correct rue is "that the court should grant a nonsuit if,
in view of all the evidence introduced by the plaintiff, it would
grant a new trial if the jury should bring in a verdict in his
favor" (*Garver* v. *Lynde,* 7 Mont. 108), and that there must
be more than a mere scintilla of evidence to justify a verdict.
(*Pierce* v. *Great Falls & Canada Ry. Co.,* 22 Mont. 445 ; *Pat-
ton* v. *Railway Co.,* 177 U. S. 658.)

MR. COMMISSIONER CLAYBERG prepared the follow-
ing opinion for the court :

Appeal from a judgment of nonsuit.   The action was for
damages resulting from a personal injury caused by the alleged
negligence of defendant in not using ordinary care to provide
and maintain a reasonably safe place for plaintiff to work.

It appears from the record that defendant had constructed
six ore bins, in a continuous line, for the purpose of receiving
ore from loaded freight cars.   Only three of these bins were at
the time of the accident in actual use, and these were at the
westerly end of the line.   The next bin to those in actual use
was full of ore, which had been placed therein prior to plain-
tiff's employment.   Bins 5 and 6 (those farthest to the east)
were empty, and about twenty-two feet in depth.   Lengthwise,
over this line of bins, two railway tracks had been constructed
and maintained, over which cars containing ore were moved
from the east to west, for the purpose of unloading in bins 1,
2 and 3.   Two board walks were also constructed parallel to the
railway tracks over all the bins—one about 2½ feet wide, be-
tween the two railway tracks, and another on the north side of
the tracks.   These walks seem to have been constructed for the
accommodation of the men working there, as a means of passage.
It was the duty of the men who unloaded the cars in bins 1, 2
and 3 to bring the loaded cars from the east, where they were

stored, to the place of unloading. For this purpose three men were usually employed; one to attend to the brake on the loaded car, one to uncouple the car from the others, and one to start the car with a pinch bar, if necessary. Bins 5 and 6 were not covered between the tracks; bin 4 was full of ore; the nearest light was about one hundred and twenty feet away from the place where the accident occurred, being suspended over the center of bin 3. Plaintiff was hired to unload ore, and do such other work connected therewith as was required of men in like employment. The injury complained of occurred about 2 o'clock a. m. Plaintiff had worked only ten shifts prior to that time, and had never before uncoupled cars. One Nelson, the "straw boss," who had charge of the men working on the shift, told plaintiff and one Morris to go with him after a loaded car. When they reached the car, Nelson mounted it on the end nearest to bin No. 3 to attend to the brake. Plaintiff, under Nelson's directions, passed along the car to uncouple it at the other end. He says he placed his left foot on the board walk between the tracks, his right foot on the timber rail or on the rail of the track, and reached over to uncouple the car, and fell in the bin, breaking his back. There was a little light between the tracks, but it was very dark between the cars.

At the conclusion of plaintiff's case defendant made a motion for nonsuit, which was sustained, and judgment entered for defendant. From the judgment this appeal is prosecuted.

1. Counsel for respondent first objects to the sufficiency of the third specification of error in appellant's brief, and insists, as the motion for nonsuit was based upon the proposition that the evidence given on the trial in behalf of plaintiff conclusively showed that plaintiff was guilty of contributory negligence, or had assumed the risk of the employment, as well as upon the proposition that plaintiff's proof did not tend to support the allegations of the complaint, that appellant could not be heard to attack the judgment of nonsuit on the ground that the testimony did not show contributory negligence or assumption of risk. This specification is as follows: "It was error in the court

to hold that the evidence was insufficient to go to the jury as tending to support the allegations of plaintiff's complaint. It was accordingly error to sustain the defendant's motion for nonsuit."

Respondent's objection is purely technical, and should only be sustained if no other conclusion can be reached. The error complained of is clearly as to the action of the court below in granting a nonsuit. Appellant's reasons why he claims the decision was error are immaterial, and are not required to be set forth by the rules of this court. They are therefore mere surplusage, and should not be considered. The provisions relied on are found in Rule X, Subd. 3, which, among other things, provides that the appellant's brief shall contain "a specification of errors relied upon, which shall be numbered and shall set out separately and particularly each error intended to be urged." There is no requirement that the specification shall set out appellant's reasons why he claims the decision is error. That is purely a matter of argument. It is sufficient under the provisions of this rule, therefore, to simply specify that the court below "committed error in granting the motion for nonsuit."

The rules of the court are not established for the purpose of befogging attorneys, and a reasonable interpretation of them, therefore, should obtain. The purpose of this subdivision of Rule X, above cited, is to require attorneys to specify and point out the errors of which they complain, and not to give their reasons why they complain it is error, and, if more than one error is charged, to number them and set them out separately and particularly.

Counsel for appellant at the hearing requested permission to amend specification of error No. 3, which was objected to by respondent on the ground that the specification in the brief should correspond with the specification of error in the bill of exceptions, and that the bill of exceptions could not be amended, *ergo* the brief could not. It seems that attorneys generally have fallen into the error that the statutes require a bill of exceptions to contain a specification of errors at law relied upon by the

parties settling the same. We are of the opinion that this is not required. None of the sections of the statutes providing for the settlement of bills of exception require that such bills shall contain specifications of errors at law. The statutes providing what the bill of exceptions shall contain, it is complete when it contains such matter, and therefore there can be no authority for requiring matters to be stated in the bill of exceptions which are not required by the statutes.

The error probably arose from the provisions of Section 1173 of the Code of Civil Procedure, which requires that in statements, "when the notice designates as the ground of the motion errors in law, occurring at the trial and excepted to by the moving party, the statement shall specify the particular errors upon which the party will rely." But an examination of this section shows that it only applies to statements, and has no reference to bills of exception. Subdivision 2 of this section referes to bills of exception. Subdivision 3, which contains the foregoing language, refers exclusively to a statement of the case settled on motion for a new trial. The California statutes are the same as ours, and that court has uniformly held the doctrine above announced. (*Reay* v. *Butler,* 69 Cal. 572, 11 Pac. 463; *Shadburne* v. *Daly,* 76 Cal. 355, 18 Pac. 403; *Hagman* v. *Williams,* 88 Cal. 146, 25 Pac. 1111; *Barfield* v. *South Side Irrigation Co.,* 111 Cal. 118, 43 Pac. 406; *Snell* v. *Payne,* 115 Cal. 218, 46 Pac. 1069.)

In this case motion for nonsuit was made and granted. Plaintiff below saved his exceptions, and settled his bill of exceptions containing the testimony and his exceptions to the ruling of the court. This exception is all the statute requires to be shown in the bill of exceptions to save his right to urge the error in this court.

2. Did the court err in granting the nonsuit? We shall preface our consideration of this question with a statement of some legal principles, and then apply such principles to the question in hand.

(1) The question presented on a motion of nonsuit is one of

law.  (*Emerson* v. *Eldorado Ditch Co.,* 18 Mont. 247, 44 Pac.
969; *Donahue* v. *Gallavan,* 43 Cal. 573.)

(2) The following are generally questions of fact:   (a)
Whether the defendant was negligent.   (b) Whether the injury
complained of was the direct or proximate result of the negli-
gence alleged.   (c) Whether the plaintiff was guilty of such
contributory negligence as will prevent his recovery.   (d)
Whether the plaintiff assumed the risk of the employment. The
burden is always upon plaintiff to show the facts specified in
"a" and "b." The burden in this case was upon
defendant to show the facts specified in "c" and "d."
The decisions of this court have settled the propo-
sition that in a case of this character the burden is upon the de-
fendant to allege and prove contributory negligence. (*Cum-
mings* v. *Helena & Livingston S. & R. Co.,* 26 Mont. 434, 68
Pac. 852.) This court, in the case last cited, uses the following
language: "In actions for personal injuries the absence of
contributory negligence is not required to be pleaded or proved
by the plaintiff, but its presence is a matter of defense. Such
is the law in Montana. *Higley* v. *Gilmer,* 3 Mont. 90, 35 Am.
Rep. 450; *Mulville* v. *Pac. Mutual Life Ins. Co.,* 19 Mont. 95,
47 Pac. 650. The contrary rule was announced in *Ryan* v. *Gil-
mer,* 2 Mont. 517, 25 Am. Rep. 744, but has been overturned
by the cases cited and those referred to by the opinions therein.
If, however, the complaint shows the proximate (or a proxi-
mate) cause of the injury to have been the act of the plaintiff,
the complaint must also state his freedom from negligence in
the doing of the act, otherwise the pleading is bad. *Kennon* v.
*Gilmer,* 4 Mont. 433, 2 Pac. 21; and so, if the evidence in be-
half of the plaintiff shows the injury to have been directly
caused (either in whole or in part) by his act, the burden is
immediately upon him to prove that he was exercising ordinary
care at the time. *Nelson* v. *City of Helena,* 16 Mont. 21, 39
Pac. 905." This doctrine has been reannounced and reaffirmed
in the case of *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871.
Of course, the existence of these defenses may be disclosed by

plaintiff's witnesses, and, if so disclosed, defendant can have the same advantage of them as if proven on his part.

(3) The rule of this court governing nonsuits is well stated in the case of *Cain* v. *Gold Mountain Mining Company,* 27 Mont. 529, 71 Pac. 1004, in the following language: "Upon a motion for a nonsuit, everything will be deemed to be proved which the evidence tends to prove. *State ex rel. Pigott* v. *Benton,* 13 Mont. 306, 34 Pac. 301; *Morse* v. *Granite County Commissioners,* 19 Mont. 450, 48 Pac. 745. The rule is well established 'that no cause should ever be withdrawn from the jury unless the conclusion from the facts necessarily follows, as a matter of law, that no recovery could be had upon any view which could reasonably be drawn from the facts which the evidence tends to establish.' *Great Northern Ry. Co.* v. *McLaughlin,* 17 C. C. A. 330, 70 Fed. 669." See, also, *Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42; *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871; *Michener* v. *Fransham,* 29 Mont. 240, 74 Pac. 448; *Gardner* v. *Mich. Central R. Co.,* 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107; *Patton* v. *Southern Ry. Co.,* 82 Fed. 979, 27 C. C. A. 287. These questions, being generally questions of fact, only become questions of law where the facts are such that "all reasonable men must draw the same conclusions from them."

In *Patton* v. *Southern Ry. Co., supra,* the court says: "It is difficult to mark with precision the exact line which separates the functions of the judge from the functions of the jury in actions of negligence; for this being a mixed question of law and fact, and the terms by which it is usually defined having a relative significance, the rule requiring judges to decide questions of law, and juries to decide questions of fact, is perplexed with subtleties when applied to the special circumstances of each particular case. When the facts are undisputed, and such that all reasonable minds must draw the same conclusion from them, it is clearly the duty of the judge to say, as matter of law, whether or not they make a case of actionable negligence; but such is the infirmity of the human mind, and such its idiosyn-

crasies, that minds equally honest may sometimes draw different
conclusions from the same facts. In all such cases, and wher-
ever the facts are in dispute, it is as clearly the duty of the judge
to submit them to the jury; for the law holds that twelve im-
partial men, applying their separate and varied observations
and experiences of everyday life to the decision of questions of
fact, are more likely to reach a correct conclusion than a single
judge; and this must be so, if the jury system is worthy to be
preserved.    The courts have long since abrogated the doctrine
that a mere scintilla of evidence from which there might be a
surmise of negligence is sufficient to carry a case to a jury, and
have adopted the more reasonable rule that in all cases there is
a preliminary question, which the judge must decide—whether,
granting to the testimony all the probative force to which it is
entitled, a jury can properly and justifiably infer negligence
from the facts proved; for, while negligence is usually an in-
ference from facts, it must be proved, and competent and suffi-
cient evidence is as much required to prove it as to prove any
other fact.    The simplest definition of 'negligence' is absence of
due care under the circumstances.    This seems easy of compre-
hension, but, when one attempts to apply it to a particular case,
the inherent vagueness of the terms 'due care' and 'reasonable
prudence' becomes apparent; for there is no fixed and immuta-
ble standard by which to measure duty in the varying and di-
verse transactions and happenings of life, and what may be due
care in one condition and relation is the want of it in another.
A process of ratiocination, therefore, becomes necessary—com-
parison and deduction.    When this comes into play, new diffi-
culties arise from the distinctive individualities, peculiarities
and anfractuosities of the human mind.    Of all the reported
cases wherein judges have granted nonsuits or directed verdicts
in actions of negligence, there are few where other judges,
equally conscientious, might not have discovered some fact which
would be considered rightly capable of producing a different im-
pression on other minds, and therefore properly cognizable by
a jury.    One clear thread seems to run through them all, and

that is that in all actions founded on negligence, whenever the facts are in dispute or conflicting, or the credibility of witnesses is involved, or the preponderance of testimony, and wherever the facts admitted or not denied are such that fair-minded men might draw different inferences from them, it is a case for a jury; and a case should not be withdrawn from the jury unless the inferences from the facts are so plain as to be a legal conclusion."

We have carefully examined the testimony disclosed by the record, and cannot say that "the facts are such that all reasonable men must draw the same conclusions from them." Therefore we must conclude that the above stated questions in this case were questions of fact, and that the court erred in granting a nonsuit.

3. Counsel for respondent claim that appellant's own testimony conclusively shows that he either had full knowledge that bins 5 and 6 were open, empty and dangerous, or was charged with such knowledge from the fact that he passed over them frequently to and from his work. But appellant denies such knowledge, and this fact, taken in connection with other facts and circumstances disclosed in the evidence for plaintiff, is sufficient, we think, to go to the jury upon the question of plaintiff's knowledge or means of knowledge of the dangerous condition of the place of his employment.

4. It is also claimed that there was a variance between the allegations of the complaint and the proof. As before stated, the negligence charged was that defendant did not use ordinary care to provide and maintain a reasonably safe place for plaintiff to work. We think the proof of this negligence was sufficient to go to the jury. The variance claimed does not go to the showing of the negligence alleged, but merely to the details of the occurrence by which the injury was caused, and we cannot say that such variance entitled defendant to a nonsuit; besides, the motion for nonsuit was not based upon variance, and no new grounds can be advanced in this court.

Further reference to the many other propositions urged by respondent seems unnecessary. We advise that the judgment appealed from be reversed, and the case remanded for trial.

Per Curiam.—For the reasons stated in the foregoing opinion, the judgment is reversed, and the case remanded for trial.

Rehearing denied April 4, 1904.