payment of an illegal assessment is made to successfully close a business transaction, it is a payment for convenience, and therefore voluntary. To make it involuntary, it must be made because of coercion in fact or coercion by law."

In Swift Co. v. U. S., 111 U. S. 22, 4 Sup. Ct. 244, 28 L. Ed. 341, cited by the learned counsel for the appellants, the court say that the exaction of the United States was, in effect, saying to the appellant that, unless it complied with such exaction, it could not continue its business at all. "The only alternative was to submit to an illegal exaction or discontinue its business." In Peyser v. The Mayor, 70 N. Y. 497, 26 Am. Rep. 624, also cited, the proceedings were said to have the force of a judgment under which the collector had the right to take and sell the goods. In Poth v. The Mayor, 151 N. Y. 16, 45 N. E. 372, also cited, the assessment was paid after legal steps had been taken for its collection. In Buckley v. The Mayor, 30 App. Div. 463, 52 N. Y. Supp. 452, affirmed 159 N. Y. 558, 54 N. E. 1089, the owner was compelled to pay for a permit under threat of arrest, whereupon the foreman stopped the work, and the coercion was said to be a threat of brute force. I think that the case at bar is within the principle of Redmond v. The Mayor and the exception noted in Vaughn v. Village of Port Chester, supra, and is not governed by the other authorities I have noticed, for the reason that there was no coercion in this case. The lien filed was but notice of a claim. The facts that the plaintiffs could not proceed with the work unless they obtained a loan from a certain proposed lender, and that the lender refused to make the loan unless the lien was lifted, were but accidental. The filing of the lien did not ipso facto stop the work. Not only is the case within the authorities cited, but the further circumstances that the plaintiffs made arrangements as to the materialmen to throw off $1,900 of their bills, and also accepted a rebate of $1,000, tend to establish the fact that their payment was voluntary.

The judgment should be affirmed, with costs. All concur.

---

WHITE v. LEWISTON & Y. F. RY. CO.

(Supreme Court, Appellate Division, Fourth Department.   May 3, 1904.)

1. SERVANT'S INJURIES—INCOMPETENT FELLOW SERVANTS—ASSUMPTION OF RISK—KNOWLEDGE OF INCOMPETENCY.

   A conductor on a street car, who has knowledge of the incompetency, by reason of intemperance, of the motorman on his car, assumes the risk of working with such motorman.

2. SAME—ASSUMPTION OF RISK—PLEADING—NECESSITY.

   In an action for a servant's injuries, defendant may avail himself of the defense of assumption of risk, though he did not plead it, where plaintiff's own evidence shows that the risk was assumed.

3. SAME—INCOMPETENT FELLOW SERVANTS—NOTICE—EVIDENCE.

   In an action for a servant's injuries, testimony as to a conversation, subsequent to the accident, with defendant's superintendent, as to his knowledge before the accident of the intemperance of the fellow servant through whose incompetency the accident occurred, was incompetent as original evidence of notice.

¶ 3. See Master and Servant, vol. 34, Cent. Dig. §§ 858, 868.

Appeal from Trial Term, Niagara County.

Action by Sanford White against the Lewiston & Youngstown Frontier Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Rogers, Locke & Milburn, for appellant.

King, Leggett & Brown, for respondent.

WILLIAMS, J. The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event.

The action was brought to recover damages for personal injuries to the plaintiff, alleged to have been caused by the negligence of the defendant. Defendant was operating a street railroad from Lewiston to the government reservation, a little north of Youngstown, in Niagara county. The plaintiff was a conductor upon one of its cars. The end of the track at the reservation was in the woods, and there was no bumper or other obstruction to prevent a car from running off the track. There was a hollow at the end of the track, about three feet deep. On the occasion of the accident the car approached the end of the track, and the front end went off into the hollow. The plaintiff stood on the rear platform, and was thrown down and injured by the accident. The motorman, who had charge of the power upon the car, left his position at Youngstown, and permitted one Hack to handle the power and run the car down to the reservation, where the accident occurred. The ground of negligence alleged, and upon which a recovery was had, was the employing, and continuing in its employ, an incompetent motorman, knowing him to be such. It was claimed that O'Brien was a habitually intemperate man; that he was intoxicated at the time of the accident, and the accident was the result of such intoxication. The accident occurred in October, 1899. The plaintiff and O'Brien entered the defendant's employ when the road was opened, in 1896. The plaintiff had been a conductor all the time. O'Brien was at first a trackman, worked in various other positions, and three or four months before the accident became motorman of a freight motor. He worked in that capacity until a week before the accident, when he was transferred to a passenger car as motorman. The plaintiff and O'Brien worked together on this same car for the week before the accident, making seven round trips each day. The accident occurred between 7 and 8 o'clock in the evening. The car was a closed one, with a baggage compartment at the front end. There was a partition between the baggage and passenger compartments. The plaintiff, from his position on the rear platform, could not see who was running the car as motorman after it left Youngstown. There was evidence to warrant the finding by the jury that O'Brien was for some time before the accident habitually intemperate, and incompetent, by reason of such habit, to act as motorman; but the plaintiff seems to have been aware of O'Brien's habits before and at the time he commenced and while he continued to be motorman on his car. In his talk with Sims, the defendant's superintendent, plaintiff designated O'Brien as a drunken motorman. There was evidence upon which the jury

were justified in finding that O'Brien was under the influence of liquor and was intoxicated at the time of the accident. It is, however, difficult to see just how his condition was the cause of the accident. The only theory is that he left the power to Hack because he was so intoxicated, that he would not have done so except for his condition, and that the accident occurred because Hack, and not O'Brien, was running the car. Hack was an employé of the defendant, was somewhat accustomed to acting as motorman, and had run cars down over this part of the road on other occasions prior to the accident. There was some evidence that he, too, was under the influence of liquor at the time the accident occurred. The car was being run by Hack rapidly, and he apparently did not shut off the power soon enough to stop the car before it went off the end of the tracks.

The verdict upon the merits must be supported upon the theory of the negligence of the defendant in having O'Brien in its employ as motorman, he being habitually intoxicated and incompetent. By reason of his being kept in defendant's employ, he was in charge of this car; and, by reason of his being intoxicated, he intrusted the power to Hack; and, by reason of Hack's incompetency, the accident occurred. Therefore defendant's negligence caused the accident. This will hardly do. It is doubtful if, as a matter of law, it can be said that, in this condition of things, the defendant's negligence was not the proximate cause of the accident, if it was the cause at all. It can hardly be said that the causal connection between the defendant's negligence and the accident was broken by the interposition of independent, responsible, human action. Hack was placed in control of the power by O'Brien, the defendant's servant. He did not assume to take control of it without O'Brien's direction. If he had done so, the rule as to proximate cause, as claimed by the defendant, would be applicable.

In Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216, Sage was in no way responsible for the dropping and explosion of the bomb. That is a fair illustration of the rule. We are in a good deal of doubt, however, whether the jury were justified in finding the accident was the result of the defendant's negligence at all; that is, that it was a natural result of the defendant's negligence in keeping in its employ a habitually incompetent employé. To be more specific, could the jury fairly infer that O'Brien put Hack in charge of the power because he (O'Brien) was then intoxicated, and would not have done so if he had been sober, and that the accident occurred by reason of Hack's incompetency? It is very doubtful if a verdict based upon this finding should be sustained, and this finding is absolutely essential to support the verdict.

We are, however, of the opinion that the judgment and order must be reversed for two reasons other than that already discussed:

(1) The plaintiff assumed the risk of working with O'Brien. So far as he was incompetent by reason of his intemperate habits, plaintiff testified himself that he had knowledge of such incompetency all the time. It was not necessary to plead assumed risk under the circumstances of this case, if it is in any case. Here the evidence was given by the plaintiff, not by the defendant, and, being in the case, the de-

· fendant might have the benefit of it. The question was raised upon the motion for nonsuit.

(2) The evidence given by plaintiff's wife of a conversation with Sims, the defendant's superintendent, subsequent to the accident, as to his (the superintendent's) knowledge of the intemperate habits of O'Brien before the accident, was clearly incompetent. It was merely as to admissions by an employé as to past occurrences for which the defendant was not responsible. The evidence was not given to impeach the superintendent, but as original evidence of notice. Kay v. Met. St. Ry. Co., 163 N. Y. 447, 57 N. E. 751; Luby v. Hudson R. R. R. Co., 17 N. Y. 131; Goetz v. Met. St. Ry. Co., 54 App. Div. 365, 66 N. Y. Supp. 666; Taylor v. N. Y. C. & H. R. R. R. Co., 63 App. Div. 586, 71 N. Y. Supp. 884; Nat. Bank Rondout v. Byrnes, 84 App. Div. 100, 82 N. Y. Supp. 497. It is said that this evidence, being given to show notice to defendant of the habits of O'Brien prior to the accident, was competent, under Vandewater v. Town of Wappinger, 69 App. Div. 325, 74 N. Y. Supp. 699; Shaw v. Town of Potsdam, 11 App. Div. 508, 42 N. Y. Supp. 779. Those cases apparently were not reviewed by the Court of Appeals. They are not well considered, and are in conflict with the general rule adhered to since Luby v. Hudson R. R. R. Co., above, was decided, as shown by the cases above cited, and many other cases referred to therein.

For the errors hereinbefore referred to, the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event, on the law and the facts. All concur, except SPRING and HISCOCK, JJ., who concur in the result—SPRING, J., on the ground of the reception of incompetent evidence; HISCOCK, J., on grounds of assumed risk and reception of incompetent evidence.