## NEW YORK, N. H. & H. R. CO. v. VIZVARI.

(Circuit Court of Appeals, Second Circuit. December 18, 1913.)

No. 29.

1. MASTER AND SERVANT (§ 264*)—INJURIES TO SERVANT—ASSUMED RISK.

Where a risk of injury alleged to have been assumed by servants was one of the ordinary risks of his employment, defendant may take advantage thereof without pleading it; but if the risk was an extraordinary one, assumption thereof must be pleaded, if relied on, unless the evidence to prove such assumption is introduced by plaintiff himself.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2 MASTER AND SERVANT (§ 204*) — INJURIES TO SERVANT — EMPLOYERS' LIABILITY ACT—ASSUMED RISK.

Federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), providing that the employé shall not be held to have assumed the risks in any case where the violation by the common carrier of any statute enacted for the safety of employés contributed to the employé's injury or death, does not abrogate the defense of assumed risk, where the injury resulted from a violation of a common-law, as distinguished from statutory, duty by the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

3. MASTER AND SERVANT (§§ 101, 102*)—INJURIES TO SERVANT—DUTY TO FURNISH TOOLS AND APPLIANCES.

A master owes a duty to his servants to furnish reasonably safe tools and appliances, viz., such as will commend themselves to a reasonably prudent man as reasonably safe and suitable, and such duty is discharged only when the master or its agents whose business it is to supply such instrumentalities exercise due care, as well in their purchase originally, as in keeping and maintaining them in such condition as to be reasonably safe for use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

4. MASTER AND SERVANT (§ 208*) — INJURIES TO SERVANT — SIMPLE TOOLS — STEEL CHISEL.

A steel chisel for cutting steel railroad rails is not a simple tool within the rule that a servant assumes the risk of the use of the simple tools and appliances furnished by the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 551; Dec. Dig. § 208.*]

5. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—ASSUMED RISK.

Plaintiff, having been directed to use a steel chisel with which to cut a steel rail believing that the same was not a good chisel and liable to chip, complained to his foreman, who informed him that the chisel was good, that he should try it, and that if he did not want to try it he could go home. Plaintiff, believing that this meant that he would either have to use the chisel or lose his position, started to use it, and during its use was injured by a chip that flew from the chisel and destroyed his eye. *Held* that, though plaintiff had knowledge of the danger, his election to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

use the chisel under such circumstances did not charge him with assumption of the risk of injury therefrom as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by Joseph Vizvari against the New York, New Haven & Hartford Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This action is brought by an alien, a subject of the Emperor of Austria, against the defendant corporation, a citizen of the state of Connecticut, engaged in interstate commerce and doing business in the state of New York. At the time of the commencement of the action the plaintiff was a resident of the state of New York. The action is to recover damages for an injury suffered by the plaintiff while employed by the defendant as a "section hand" or laborer on the railroad. The injury occurred while the plaintiff was striking a steel chisel with a sledge hammer for the purpose of cutting a steel rail. The chisel and hammer were furnished by the section foreman in charge of the defendant. It is claimed that the chisel at the time and for a long time prior thereto was in a defective, unsafe, insecure, and dangerous condition. The plaintiff asserts that the chisel was so beaten, used up, and mushroomed that scales and splinters formed thereon, and that when the chisel was struck by the hammer particles of steel were liable to break off and fly about with force and velocity, and that the particles, because of their shape and size, could not be detected by the naked eye. He alleges that the danger was not fully appreciated by him. While the plaintiff was engaged at his work and was striking the head of the chisel with the hammer, the chisel being held on the rail by another of the defendant's employés, one of the scales, he claims, flew off the chisel and struck him in his right eye, destroying the sight. For the permanent injury thus suffered and for his physical and mental pain and loss of wages he asked damages in the sum of $15,000.

Charles M. Sheafe, Jr., of New York City (Frederick J. Moses, of New York City, of counsel), for plaintiff in error.

Rufus M. Overlander (Herbert C. Smyth and Roderic Wellman, both of New York City, of counsel), for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This cause comes here on writ of error to the District Court of the United States for the Southern District of New York to review a judgment entered in favor of the plaintiff below for the sum of $5,626.61. The judgment is based upon the verdict of a jury in the amount of $5,500 with interest thereon from the 7th day of November, 1912, to the date of the judgment, together with the costs. This judgment was awarded to the plaintiff below for injuries received by him while in the employ of the defendant below while working for it in repairs upon its tracks near Bridgeport, Conn.

[1] The plaintiff below alleged in his complaint that there was no negligence or want of care on his part contributing to the injury. The defendant in its answer alleged that, if the plaintiff sustained the injury claimed, it resulted to him solely by reason of his contributory negli-

gence and lack of care. The defendant did not plead assumption of risk, but it relied upon it at the trial, and the court left it to the jury to say whether the plaintiff assumed the risk of the use of the chisel. In considering the necessity and sufficiency of the pleas of assumed risk, it is necessary to observe that a difference exists between the assumption of the "ordinary" risks of the employment and the assumption of "extraordinary" risks. If the risk is of the former kind, it is not incumbent on the defendant to plead it; but, if the risk is of the latter kind, the rule in some jurisdictions is that, if the defendant desires to rely upon it as a defense, he must specially plead it. See Labatt on Master & Servant, vol. 4, § 1636; Bailey on Personal Injuries (2d Ed.) vol. 3, § 851. But in this court the question is controlled by the rules which obtain in the state in which the action is tried. Canadian Pacific Ry. Co. v. Clark, 73 Fed. 76, 81, 74 Fed. 362, 20 C. C. A. 447.

Whether in New York the defense needs to be specially pleaded, it is not necessary to inquire, inasmuch as where the evidence going to prove assumption of risk is given by the plaintiff—as it was in the case at bar—it is the rule in New York, and perhaps in all jurisdictions, that the defendant may have the benefit of it. White v. Lewiston & Y. F. Ry. Co., 94 App. Div. 4, 87 N. Y. Supp. 901, 903.

[2] The action is based on the Employers' Liability Act passed by Congress on April 22, 1908. The act provides that the employé "shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé." 35 Stat. 66, pt. 1, c. 149, § 4 (U. S. Comp. St. Supp. 1911, p. 1323). In Central Vermont Ry. Co. v. Bethune, 206 Fed. 868, 124 C. C. A. 528, the Circuit Court for the First Circuit held that the section cited limited the abrogation of the doctrine of assumed risk to instances where the violation of an express statutory duty by the carrier was charged. The court said:

"This section by its letter is clearly limited to a violation of a statute. In the case at bar there was no violation of any statute. * * * In order that the provision might apply here, instead of using the words 'violation of any statute,' it should have been broadened out to cover all the obligations of a carrier required either by the common law or by statute. * * *"

In this construction of the statute we concur. And we do not know of any statutory provision for the safety of employés which the defendant violated in furnishing the plaintiff with the chisel which occasioned the injury of which he has complained. Whatever the obligation may have been respecting the chisel, it rested upon the common law and was not derived from statute. The Employers' Liability Act makes the doctrine of assumption of risk inapplicable in certain cases, but is without application to the facts of this case. The case is to be decided on the principles of the common law.

[3] The first question to be considered is whether the defendant was guilty of a breach of duty to the plaintiff. A master is in default as respects his servant unless the appliances furnished are such as would commend themselves to a reasonably prudent man. His duty is to furnish such instrumentalities as are reasonably safe and suitable.

The Supreme Court of the United States, in Hough v. Railway Co., 100 U. S. 213, 218, 25 L. Ed. 612, said:

"The corporation is not to be held as guaranteeing or warranting the absolute safety, under all circumstances, or the perfection in all its parts, of the machinery or apparatus which may be provided for the use of employés. Its duty in that respect to its employés is discharged when, but only when, its agents whose business it is to supply such instrumentalities exercise due care as well in their purchase originally, as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employés."

The same court in Union Pacific Railway Co. v. Daniels, 152 U. S. 684, 690, 14 Sup. Ct. 756, 758 (38 L. Ed. 597), found no error in an instruction to the jury which said:

"The law is well settled, both here and in England, our mother country, that the employer should adopt such suitable implements and means to carry on the business as are proper for that purpose; and where there are injuries to its servants, or its workmen, and they happen by reason of improper or defective machinery or appliances in the prosecution or carrying on the work which they are employed to render, the employer is liable, provided he knew, or might have known, by the exercise of reasonable skill, that the apparatus was unsafe and defective."

[4] Conceding this to be the law, the defendant claims that the appliance furnished by it to the plaintiff is not governed by the law as stated because the chisel was a "simple" tool and that the rule governing "simple" tools constitutes an exception to that which applies to tools in general. The courts are not in all respects in accord as to the master's duty respecting the "simple" tool doctrine. See Labatt on Master & Servant (2d Ed.) vol. 3, § 924A.

It is undoubtedly true that in some cases the courts have gone to the length of saying that the rule requiring the master to use ordinary care in furnishing reasonably safe appliances does not apply where the injury was caused by a simple tool. Conceding that to be the case, we do not think that a steel chisel used for cutting steel rails is a "simple" tool within the meaning of the rule. The testimony of one of the defendant's witnesses made it evident that such a chisel would be safe or unsafe according to the temper of the steel. The witness was asked:

"If the steel is so hard that it will not mushroom after the striking, what will be the effect on the chisel?"

He answered:

"If you make it that way and strike it with a sledge, it is liable to go through some person—the whole head is liable to burst off it."

He also testified:

"A very hard steel is brittle. And the striking head is made softer, so it will mushroom instead of splitting. I would not care to work around one that would not mushroom, because something would happen."

And the manufacturer feels it necessary to test his product—from three to five or six out of every lot turned out, by striking the chisel on the head with a twelve pound sledge 5,000 or 6,000 blows. It will not do to assert that chisels of this dangerous character fall within the "simple" tool rule, and say that an employer putting such instruments into the hands of a workman is under no obligations to observe reason-

able care in seeing that they are suitable for the purposes for which they are to be used.

[5] The defendant, however, asserts that the injury for which this action was brought was one of the risks which the plaintiff voluntarily assumed, and that therefore the defendant is not liable even though it should be found, to have been guilty of negligence. We think, for reasons already mentioned, that while the defendant did not set up this defense in its answer, it can have the benefit of the defense so far as the plaintiff's evidence discloses an assumption of the risk.

The plaintiff testified that he objected to the chisel and that his conversation with the foreman was as follows:

"I says, Mr. Collins, this is no good chisel. And Mr. Collins says, that chisel is good; to try it. Mr. Collins says, this chisel is pretty good, you try it; if you don't want to try it you go home."

On cross-examination he testified:

"I was complaining to Collins because the head (of the chisel) was not good. And that is what I had in mind when I said to Collins, these chisels are no good." "I was not sure that a piece would come off. At the same time, I thought some time it might—a piece fly and kill somebody."

Again he testified:

"And he told me I would have to use that chisel or go home and stop work. He said if I don't want to work with that chisel I can go and start to go home. And I thought he meant I would lose my job if I quit work and did not work with that chisel. I was afraid of losing my job. That is why I did so."

The testimony showed that the plaintiff had been in the employ of the defendant for 5½ years.

A servant on accepting employment assumes all the ordinary and usual risks and perils incident thereto. The "ordinary" risks are those which are a part of the natural and ordinary method of conducting the business and which are often recurring. The "usual" risks are those which are common, frequent, and customary. Every risk which is not caused by a negligent act or omission on the part of the employer is an ordinary risk. Fortin v. Manville Co. (C. C.) 128 Fed. 642; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551; Patton v. Southern R. R. Co., 82 Fed. 979, 27 C. C. A. 287.

But a servant does not assume the extraordinary and unusual risks of the employment and he does not assume the risks which would not have existed if the employer had fulfilled his contractual duties. But only those risks are assumed which the employment involves after the employer has done everything that he is bound to do for the purpose of securing the safety of his servants. Labatt on Master and Servant (2d Ed.) vol. 3, §§ 893, 894; Hough v. Texas, etc., R. Co., 100 U. S. 213, 217, 25 L. Ed. 612; Pantzar v. Tilly Foster Iron Min. Co., 99 N. Y. 376, 2 N. E. 24; McGovern v. Central Vermont R. Co., 123 N. Y. 280, 25 N. E. 373; Illinois Steel Co. v. Bauman, 178 Ill. 351, 53 N. E. 107, 69 Am. St. Rep. 316; Severance v. New England Talc Co., 72 Vt. 181, 47 Atl. 833. As said by the Supreme Court of Vermont:

"It is only such injuries as have arisen after the exercise of that diligence and care on the part of the master that can properly be termed accidents or casualties, which the servant has impliedly agreed to risk, and for which the master is not liable." Noyes v. Smith, 28 Vt. 59, 65 Am. Dec. 222.

If the plaintiff did not in his original contract of hiring assume the risk growing out of the defective character of the machinery, tools, and appliances which might be furnished him by the defendant, did he assume the risk when with knowledge of the defective character of this chisel he went to work with it? The earlier decisions proceed upon the theory that an employé cannot recover from the employer if it appears that he continued in the employment with full comprehension of the risk from which his injury resulted. In a leading case (Woodley v. Metropolitan District R. Co., 1877 L. R. 2 Exch. Div. 384), Chief Justice Cockburn said:

"If he (the employé) continues to take the benefit of the employment he must take it subject to its disadvantages. He cannot put on the employer terms to which he has now full notice that the employer never intended to bind himself. It is competent to an employer, at least so far as civil conse-quences are concerned, to invite persons to work for them under circum-stances of danger caused or aggravated by want of due precautions on the part of the employer. If a man chooses to accept the employment, or to con-tinue in it with a knowledge of the danger, he must abide the consequences, so far as any claim to compensation against the employer is concerned. Morally speaking, those who employ men on dangerous work without doing all in their power to obviate the danger, are highly reprehensible, as I cer-tainly think the company were in the present instance."

But the law thus laid down has been superseded in England and in its dependencies. It has been at last settled in the English courts after prolonged consideration and an elaborate discussion in which some of the ablest of English judges participated, that the employer is not ex-cused from a breach of his duty to the employé unless the evidence dis-closes something more than that the servant knew of and compre-hended the risk from which the injury resulted. This doctrine which had been announced in a number of cases was finally confirmed by the House of Lords in Smith v. Baker (1891) A. C. 325. In the course of his opinion in that case Lord Herschell said:

"I think that, where a servant has been subjected to risk owing to a breach of duty on the part of his employer, the mere fact that he continues his work, even though he knows of the risk, and does not remonstrate, does not pre-clude his recovering in respect of the breach of duty, by reason of the doc-trine, volenti non fit injuria, which, in my opinion, has no application to such a case."

And Lord Halsbury in the same case put the matter in this wise:

"It appears to me that the proposition upon which the defendants must rely must be a far wider one than is involved in the maxim, 'Volenti non fit in-juria.' I think they must go to the extent of saying that wherever a person knows there is a risk of injury to himself, he debars himself from any right of complaint if any injury should happen to him in doing anything which in-volves that risk. For this purpose, and in order to test this proposition, we have nothing to do with the relation of employer and employed. The maxim in its application in the law is not limited; but where it applies it applies equally to a stranger as to any one else; and if applicable to the extent that is now insisted on, no person ever ought to have been awarded damages for being run over in London streets; for no one (at all events, some years ago,

before the admirable police regulations of later years) could have crossed London streets without knowing that there was risk of being run over."

In the case of Williams v. Birmingham Battery & Metal Co., L. R. Q. B. Div. 1899) vol. 2, pp. 338, 345—a case in the Court of Appeals—Romer, L. J., said:

"Many authorities bearing on the question we have to decide have been cited and discussed. I do not propose to review them. They appear to me to establish the following propositions as to the liability at common law of an employer of labour. If the employment is of a dangerous nature, a duty lies on the employer to use all reasonable precautions for the protection of the servant. If by reason of breach of that duty a servant suffers injury, the employer is prima facie liable; and it is no sufficient answer to the prima facie liability for the employer to show merely that the servant was aware of the risk and of the non-existence of the precautions which should have been taken by the employer, and which, if taken, would or might have prevented the injury. In order to escape liability the employer must establish that the servant has taken upon himself the risk without the precautions. Whether the servant has taken that upon himself is a question of fact to be decided on the circumstances of each case. In considering such a question, the circumstance that the servant has entered into, or continued in his employment, with knowledge of the risk and of the absence of precautions is important, but not necessairly conclusive, against him."

A recovery was allowed in the above case although the injury was occasioned by the failure of the employer to furnish proper appliances. The deceased workman had the same means of knowing the dangerous risk he was exposing himself to as his employer had and he actually knew it was dangerous.

In Beven on Negligence (3d Ed. 1908) p. 620, the law is stated as follows:

"Whether continued working in circumstances of danger amounts to an acceptance of the risk or not, is now settled to be a question of fact that must not be withdrawn from the jury."

In this country it seems to have been generally taken for granted by our courts that the earlier English doctrine was correct. See Labatt on Master & Servant (2d Ed.) vol. 1, p. 988. The Supreme Court of Massachusetts has recognized the latter doctrine of the English courts as expressed in Smith v. Baker, supra, as "a just and reasonable doctrine." That court in Mahoney v. Dore, 155 Mass. 513, 30 N. E. 366, said:

"But in a much larger class of cases it (the assumption of the risk) is a question of fact, when one has been injured by reason of an exposure which he knew involved some risk, whether he voluntarily took the risk of the injury which he received. The question divides itself into two parts: First, whether he understood and appreciated the risk, which is sometimes a question of law and sometimes a question of fact; secondly, if he appreciated it, whether he assumed it voluntarily or acted under such an exigency, or such an urgent call of duty, or such constraint of any kind, as, in reference to the danger, deprives his act of its voluntary character. He may reluctantly, so far as the danger is concerned, and under extraneous pressure which amounts almost to compulsion, expose himself to a danger which originates in another's fault, and under such circumstances it cannot be said that he assumes the risk voluntarily. * * * The tendency of recent decisions is to hold that, in regard to dangers growing out of the master's negligence, which are not covered by the implied contract between the master and servant when the service was undertaken, it is a question of fact whether a servant who works on appreciating the risk assumes it voluntarily, or endures it because he feels constrained to."

In Fitzwater v. Warren, 206 N. Y. 355, 99 N. E. 1042, 42 L. R. A. (N. S.) 1229 (1912) the New York Court of Appeals has decided that, where a master fails to comply with the requirements of a statute for the protection of his servants, it cannot be held as a matter of law that the servant, by knowledge of such failure, assumes the risk caused by the master's violation of the law. The case of Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367, asserting a contrary doctrine, is overruled. In the opinion in Fitzwater v. Warren, supra, Chief Justice Cullen said:

"There seems, at the present day, an effort by constitutional amendment to render a master liable to his employé for injury received in his employment, though the master has been guilty of no fault whatever, and I feel that such effort is in no small measure due to the tendency evinced at times by the courts to relieve the master, though concededly at fault, from liability to his employé on the theory that the latter assumed the risk of the master's fault."

We confess we do not see any adequate reason for making any distinction between an obligation imposed by the common law and one imposed by statute and holding that if with knowledge of the defect one continues to work with a defective instrument furnished him in violation of a common-law obligation, he assumes the risk as matter of law but if the defective appliance is furnished in violation of statutory obligation he does not as matter of law assume the risk even though he had knowledge of the risk arising from the master's failure to comply with the statutory requirement. It almost seems that any such distinction is fanciful and contrary to common sense. We do not understand that the New York court asserts that any such distinction exists.

The attention of the court has been called to Southern Pacific Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391. That case involved the right of a railroad employé to recover for an injury in an attempt to couple a car to a train. In attempting to make the coupling he put his foot into an unblocked frog at the switch. He had been warned at the time not to put his foot into the frog as it would be caught if he did so. He disregarded the warning, put his foot into the frog from which he was unable to extricate it, and was killed. The Supreme Court of the United States held that as matter of law he could not recover as he had been guilty of contributory negligence and that the jury should have been instructed to find in the defendant's favor. The court said:

"It was not pretended in the present case that the frog in which Seley had put his foot was defective or out of repair. The contention solely is that there is another form of frog, not much used, and which, if used by the defendant, might have prevented the accident."

That case differs in every essential respect from the case at bar. In that case the appliance was not out of repair and the risk incident to its use was simply the "ordinary" risk which the servant assumed when he entered the employment. In the case at bar the appliance used was alleged to have been out of repair and the risk assumed was, if the allegation was correct, one of the "extraordinary" risks which was not assumed when the plaintiff entered the employment and which it would be necessary for the defendant to prove that the plaintiff voluntarily

assumed thereafter. Moreover, in the case at bar the plaintiff had complained of the appliance and only continued in its use after assurance from his superior that it was all right and that he was to go on or lose his job.

In Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 672, 18 Sup. Ct. 777, 779 (42 L. Ed. 1188), the court in referring to the rule that the servant does not assume the risk arising from the neglect of the master to furnish appliances free from defects, goes on to say:

"An exception to this general rule is well established, which holds that where an employé receives for use a defective appliance, and with knowledge of the defect continues to use it without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used."

That principle does not govern the case at bar. In this case the servant gave notice of the defect and continued at work under specific orders, and what we hold is that the question whether he voluntarily and negligently continued to use the defective appliance was a question for the jury. The question whether, under such circumstances as existed in this case, it was for the court or for the jury to determine whether he voluntarily and negligently continued to use the appliance, was not determined nor discussed in the Texas & Pacific Ry. Co. Case, supra. So in Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 25 (48 L. Ed. 96), the court said:

"In other words, if he (the servant) knows of a defect, or it is so plainly observable that he may be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master, notwithstanding the defect, and in such case cannot recover."

In that case the assumption of risk was left to the jury.

We know of no decision in the Supreme Court of the United States or in this circuit which requires us to hold that on such a state of facts as exists here the court should say as matter of law that the plaintiff is not entitled to recover and that the jury should have been so instructed. Courts have in some cases, as it appears to us, overemphasized the doctrine of assumption of risk and underemphasized the duty of employers to furnish safe appliances to their employés. Some of the theories which courts have advanced have led to conclusions the justice of which as respects the relation of master and servant has not commanded general assent. For courts to, assume as matter of law that one voluntarily assumes the risks involved in continuing to work with unsafe appliances furnished by the master, rather than lose his employment and subject himself to the consequences which are apt to ensue from the loss of his position, seems to us a harsh and unwise doctrine. It assumes that physical compulsion is the only coercion which a court of justice can recognize. At a time when enlightened states in Europe and America are enacting Employers' Liability Laws and Workmen's Compensation Acts to modify established principles of the law ·which are now thought to be unsuited to existing economic and social conditions, the courts should be careful not to fall into the error of assuming as matter of law what is far more properly matter

of fact. The question of negligence is generally a deduction of fact from other facts and not a conclusion of law. It is not a question of law unless the statute or the decisions of the courts have established a definite rule of conduct for a given situation. Thus if the law of a particular jurisdiction establishes the rule that one approaching a railroad track "must stop, look, and listen," and one in disregard of the rule undertakes to cross the track and is injured, there is nothing to submit to the jury. Negligence in such a case is a matter of law, and the question of whether his conduct evinced a want of prudence and discretion cannot be submitted to the jury. The question must go to the jury where the facts are in dispute or where fair minds might draw different conclusions from the facts as disclosed by the evidence. Thompson on Negligence, §§ 429, 430. And so in reference to assumption of risks, where an employé has knowledge of a defect or danger and calls, as in this case, the attention of the employer or his representative to it, and is ordered to go on with the work, the question should go to the jury to say whether the danger was so manifest that a person of ordinary prudence and caution would have incurred it and also whether the risk was imminent.

Where the facts are clearly established and the conclusion to be drawn from the facts is a matter which cannot reasonably be the subject of any doubt or controversy, the question of negligence is for the court and not for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question is for the court. Grand Trunk R. Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Patton v. Texas, etc., R. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361. The doctrine of the Supreme Court of the United States is that the trial court is bound to submit the case to the jury unless a recovery is impossible upon any view that can be properly taken of the facts which the evidence tends to establish. Dunlap v. Northeastern R. Co., 130 U. S. 649, 9 Sup. Ct. 647, 32 L. Ed. 1058; Kane v. Northern, etc., R. Co., 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339.

The question of negligence where the facts are undisputed seems to have sometimes been regarded as one of law. But this is believed to be a radically unsound view of the matter.

On the facts disclosed in this case we are not prepared to say that all reasonable men would reach the same conclusions.

The questions involved are not questions of law for the court, but questions of fact for the jury. It was for the jury to say whether the defendant was negligent in furnishing this chisel to the plaintiff, and whether the plaintiff voluntarily assumed the risks incident to its use, and whether those risks were imminent and such that no man of ordinary prudence would encounter them.

We find no error in the charge given to the jury.

The judgment is affirmed.

WARD, Circuit Judge (dissenting). I find myself unable to concur in the opinion of the court. The sole question for consideration is whether the plaintiff assumed the risk of what injured him. The law

itself writes into the contract between master and servant that the servant shall assume the ordinary risks of the employment he enters. A chisel is a tool in ordinary use in the maintenance of all railroads. Its use necessitates the spreading and abraiding of the head. Indeed, it would be proof that the metal was unsuitable if this did not happen. Splinters frequently fly off when the chisel is struck by the hammer. All these things the plaintiff knew. He had used such chisels for over five years and testified as follows:

"Q. And when you say the head was no good, you meant a piece might fly off when it was struck; was that what you were complaining about? A. I was not sure that a piece would come off. At the same time, I thought some time it might, a piece fly and kill somebody. And I thought it might fly off, and that is the reason I complained to Collins.

"Q. And you had seen other chisels used that, after being used during the day had frayed off and bent over on the top and had broken off this way, hadn't you? A. I did not see it.

"Q. You never saw any other chisel bent over like this? A. Yes, I did, many of them.

"Q. And did you never see a piece fly off and break off, or a chisel from which a piece had broken off? A. I did see that many times more, but it did hit nobody. It might hit somebody on the leg or fall on the ground. And I had seen that happen often, and when I say this chisel had a head bent over like that, and I complained of it, I had in mind that pieces might fly off this chisel the same as they had from others. Collins told me to use the same chisel, because it was a chisel that was good for use; because the point was not sharp to be used; they told me to use this chisel. And he told me I would have to use that chisel or go home and stop work; he said if I don't want to work with that chisel I can go and start to go home. And I thought he meant I would lose my job if I quit work and did not work with that chisel. I was afraid of losing my job. That is why I did so.

"Q. And you thought this piece might fly off? A. I thought it would fly off, but I was not sure it would. And I went on and worked rather than lose my job. After this accident, this thing struck me in the eye; it hurt me so much that I did not know what to do with myself."

If he had continued to use the chisel because he relied upon the judgment of the foreman as better than his own or because the foreman had led him to believe that another chisel would be substituted, there might have been a question for the jury. But he states explicitly that he continued to use the chisel rather than quit. I could understand a case being sent to the jury in which the only knowledge the injured servant had of the particular thing which injured him was that imputed to him as matter of law, because he assumed the ordinary risks. But where the servant actually knew and appreciated precisely what the particular danger was, as in this case, before he used the thing which injured him, it seems to me there is no question for the jury. What was there for them to find? Could they, in the face of the plaintiff's own testimony, hold that he did not know and did not appreciate the risk? Or could they say that he continued to strike the chisel for some other reason than the one he himself gave?

I think the motion to direct a verdict in favor of the defendant should have been granted.